UNITED STATES, Appellee,

v.

Lance H. DUNBAR, Senior Airman, U. S. Air Force, Appellant.

No. 39,770.

ACM 22652.

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellant: *Captain Douglas H. Kohrt* (argued); *Colonel Larry G. Stephens, Major Wade B. Morrison* (on brief); *Colonel George R. Stevens.*

For Appellee: *Captain Michael J. Hoover* (argued); *Colonel James P. Porter* (on brief).

Opinion of the Court

EVERETT, Chief Judge:

Appellant was tried at Torrejon Air Base, Spain, by a military judge sitting as a general court-martial. Charge I, which was alleged under Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934, contained seventeen specifications alleging various drug offenses; Charge II alleged three separate conspiracies to sell drugs, in violation of Article 81 of the Code, 10 U.S.C. § 881. However, the military judge dismissed the first conspiracy specification for violation of the principle that where a substantive offense—in this instance, sale of cocaine—may not be accomplished without cooperative action, the preliminary agreement between the same parties to commit the offense is not indictable as a conspiracy. *See, e.g., Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946). Appellant pleaded guilty to the remaining specifications; the military judge, after entering findings pursuant to the pleas, sentenced him to a dishonorable discharge, confinement at hard labor for 4 years, forfeiture of $100 pay per month for 4 years, and reduction to the lowest enlisted grade. After the findings and sentence were approved by the convening authority and affirmed by the United States Air Force Court of Military Review in an unpublished opinion, we granted review (10 M.J. 191, C.M.A.) on this issue:

WHETHER THE APPELLANT'S PLEAS OF GUILTY TO SPECIFICATIONS 13 THROUGH 16 OF CHARGE I AND SPECIFICATION 3 OF CHARGE II WERE IMPROVIDENT.

I

Specification 3 of Charge II alleges conspiracy in these terms:

In that, SENIOR AIRMAN LANCE H. DUNBAR, United States Air Force, 401st Transportation Squadron, did, at or near

Torrejon Air Base, Spain, on or about 29 January 1979, conspire with William A. Sams, Jr., to commit an offense under the Uniform Code of Military Justice, to wit: the sale of a habit forming narcotic drug, cocaine, and in order to effect the object of the conspiracy the said SENIOR AIRMAN LANCE H. DUNBAR, furnished William A. Sams, Jr., with 3 grams, more or less, of a habit forming narcotic drug, to wit: cocaine on or about 30 January 1979.

Specifications 13–16 concerned four sales of cocaine made at various times between January 30, 1979, and February 6, 1979, by William A. Sams, Jr., the individual with whom Dunbar had allegedly conspired. The government's theory, of course, was that these four sales were pursuant to the conspiracy which was alleged in specification 3 and which Dunbar had acknowledged in the course of the providence inquiry. Appellate defense counsel assert to the contrary, i. e., that the providence inquiry fails to establish that the alleged conspiracy existed or that the four sales by Sams fell within the objects of the conspiracy.

During the providence inquiry, appellant explained that Sams worked in the same squadron with him; "he was a yard master, a boss of mine." On one occasion he smoked hashish with Sams; on another, he sold some hashish to Sams. The origin of the alleged conspiracy was described by appellant in this manner:

ACC: He was about to get a bad discharge. He had wrote some bad checks and was in debt and he was looking for a quick way to make a buck; and he had approached me several times and almost to the point of nagging me to let him on to some people down town so he could get himself set up ... [in] dealing drugs and get himself financially set. So he asked me if I could arrange for him to have this cocaine, this three grams, given to him without any money, with the understanding that after he sold it he would give me the monetary value so I could in turn give it to who it belonged to.

Dunbar specifically acknowledged "[t]hat I understood at that time that Sergeant Sams would take this cocaine and sell it to willing buyers in the Torrejon Base community." As to the events on which the four related specifications were based, appellant explained, in seeking clarification of the elements of specifications 13–16:

ACC: I did not sell these amounts of cocaine to these individuals; but I was aware Sergeant Sams—what happened was that he had come up and approached me on several occasions wanting to become a dealer of cocaine and he wanted to get into the drug scene heavy and he had me talk to someone I knew that had this controlled substance; and he was in debt, he needed money, he didn't have any. And anyway, he wanted me to give him two or three grams or to ask this other individual to give him three grams for free so he can sell it and make some money. And so this man agreed on how much he wanted and I related the message to Sams and gave him the three grams of cocaine; but I was not aware of these sales, or who, or how he broke it up because I gave him three grams in one packet. I will state it again for the record, I did know that he was going to sell this cocaine.

Appellant was to obtain from a Spanish supplier the three grams of cocaine which he would furnish to Sams for resale. Since appellant "used ... [the supplier] quite a bit," he was to obtain the three grams on credit for $250; in turn, Dunbar would provide the cocaine to Sams on credit and be repaid from the proceeds of sale. The Spaniard was "fronting" the cocaine to appellant

in my good faith that Allen Sams when he finished selling the three grams and anything added that he chose to, that the monetary value which this other Spaniard had stipulated would be given routinely back to him. And see, the Spaniard left it to me in my own judgment, if I wanted to make anything or to, you know, bump the price on Allen Sams because he was

in debt and that was the only reason I was doing it, because they were going to kick him out of the Air Force; and I didn't ask for anything that would have defeated his purpose by coming up and asking for something.

Some three months later Sams paid Dunbar $100 which in turn was delivered to the Spaniard in part payment of the purchase price.

Appellant gave this picturesque description of his role:

Unfortunately I was stuck in the middle, with mental emotions between clients and friends; one who was looking at selling a lot of cocaine and making a lot of money, and another one who wants to buy the cocaine and turn around and sell it to the Air Base community. I was nothing more than a stepping stone that got used.

At another point in the providence inquiry this colloquy ensued between the military judge and appellant:

MJ: The agreement was that you were going to go to a source and obtain three grams of cocaine; and that that cocaine would be fronted to you for no money at that time. Is that right so far?

ACC: Yes sir.

MJ: Then you were going to take that same three grams and give it to William A. Sams, Jr., and he wasn't going to give you any money at that time. Am I right so far?

ACC: Yes sir, you are.

MJ: And that you understood that he was agreeing to pay you the $250 at some later time, so that you could then give that $250 back to your source?

ACC: Yes sir, after he sold it.

MJ: And you understood that he was to sell it in order to get that money, not only to pay the Spaniard who had given you the cocaine, but also to make himself some profit so that he could get out of debt or do whatever he wanted to do with that money?

1. We need not consider in this case to what extent, if any, the sale of drugs imposed vicarious criminal liability for a resale when the

ACC: Yes sir, it was my understanding that he would do that.

■ Even though appellant was not aware of the specific individuals to whom Sams intended to sell the cocaine, we think the admissions by appellant during the providence inquiry amply demonstrate that a conspiracy existed. *See Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Bruno*, 105 F.2d 921 (2nd Cir. 1939), *revd. on other grounds*, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939); *United States v. Salisbury*, 14 U.S.C.M.A. 171, 33 C.M.R. 383 (1963). Indeed the open-ended and continuing nature of the arrangement between appellant and Sams distinguishes the case from a routine sale of drugs from one person to another. Moreover, since the ultimate resale of the cocaine by Sams was essential to carry out the purposes of the conspiracy—namely, the payment of Dunbar who in turn would pay the Spanish supplier—all four resales fell within the objects of the conspiracy. Of course, it is well established that a conspirator, in addition to being prosecuted for the conspiracy itself, can be prosecuted for substantive offenses which were committed pursuant to the conspiracy and to carry out its objectives.[1] *Pinkerton v. United States, supra; United States v. Washington*, 1 M.J. 473 (C.M.A.1976); *United States v. Salisbury, supra.*

Appellate defense counsel have called our attention to that portion of the providence inquiry during which appellant, after acknowledging that his counsel had explained to him the law of principals, observed:

I don't understand how it would be, how I could be charged with something I had no knowledge of. I knew he was going to sell it, but from what I have been told of this principals, that if he would have broken it up in a thousand little packages, I could be charged a thousand times.

Dunbar's comment does not reveal that he pleaded guilty improvidently because of a misunderstanding of the law. If Sams had broken the cocaine which appellant sup-

vendor reasonably foresees that his vendee will resell all or part of the contraband.

plied him into smaller packages and had resold the packages to a large number of vendees, then appellant could be prosecuted for each of those resales, the only limitation being the policy against unreasonable multiplication of charges.[2] In short, although appellant had a distaste for the applicable principle of law, he did not misunderstand that principle.

II

Since we are convinced that appellant's pleas of guilty were provident, we affirm the decision of the United States Air Force Court of Military Review.

Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

The majority correctly observe that a conspirator is prosecutable "for substantive offenses which were committed pursuant to the conspiracy and to carry out its objectives." 12 M.J. 218, 220. Here, the allegations of the conspiracy specification (specification 3, Charge II) are, in material part, that the accused did "conspire . . . to commit *an offense* . . . to wit: *the sale* of a habit forming narcotic drug, cocaine." (Emphasis supplied.) In my opinion, the allegations limit the objective of the criminal agreement to a single sale. It may be that the limitation was inadvertent, but the Government is bound by what is actually alleged. *See United States v. Fout*, 3 USCMA 565, 13 CMR 121 (1953). The accused was, therefore, quite correct in asking clarification of the transmutation of the allegation

of a single sale objective into a means by which he "could be charged a thousand times," if Sams had broken the amount of cocaine he had received by accused into "a thousand little packages" and had sold them. As the accused had no connection with the sales made by Sams, other than that provided by the conspiracy charge, his vicarious liability as an aider and abettor extended no further than the earliest of the sales made by Sams.

Sams made two sales on January 30, 1979 (specifications 15 and 16). The record does not indicate the time sequence, but both involved the same quantity of cocaine. In this situation I think one or the other sale can be selected as that tied to the conspiracy charge.

For the reasons indicated, I agree with the majority that the accused's plea of guilty was provident as to the conspiracy charge in issue (specification 3, Charge II), and one of the four sale charges related to it, specifically specification 16, Charge I. However, I would reverse the decision of the Court of Military Review as to the findings of guilty of specifications 13, 14, and 15 of Charge I and dismiss those specifications. I would affirm the decision of the court in all other respects, including the sentence, because the accused stands convicted of 16 offenses that are of the same genre as those dismissed and there is no reasonable likelihood that a remand for reconsideration of the sentence would result in a reduction of it. *United States v. Subia*, 12 USCMA 23, 30 CMR 23 (1960).

---

2. Since specification 3 of Charge II alleges that appellant conspired with Sams "to commit *an* offense . . . *the sale* of . . . cocaine," (emphasis added), it has been suggested that the object of the conspiracy was to make a single sale, rather than several sales. From this premise it is argued that the rationale of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), cannot be used to sustain findings of guilt of four substantive offenses—*i. e.*, four sales of cocaine—since the conspiracy had only one sale as its object. We note that in the case at bar this conspiracy specification was drafted pursuant to the form in the Manual for Courts-Martial, United States, 1969 (Revised edition). *See* Form 3, Appendix 6c. In turn, that form incorporates the language of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881,

which proscribes a conspiracy to commit "an offense." Undoubtedly, this language was not intended to exclude the possibility that a conspiracy might include several crimes among its objects. Indeed, we conclude that in the case at hand, the specification's references to "an offense" and "the sale" were intended to denominate the class of prohibited activity which the conspiracy contemplated. This meaning would have been clearer if the draftsmen had alleged "sale," rather than "the sale." Nonetheless, the language of the specification is comprehensive enough—especially absent any objection at trial—to leave unimpaired the providence of, and factual basis for, the pleas of guilty to the four specifications alleging sale of cocaine.