UNITED STATES, Appellee,

v.

Calvin L. JACKSON, Aviation Boat-
swain's Mate (Fuels) Airman
Recruit, U.S. Navy, Appellant.

No. 46,319.
NMCM No. 82 3795.

U.S. Court of Military Appeals.

May 13, 1985.

For Appellant: *Lieutenant Commander
Harold M. Shaw, JAGC, USN* (argued);
*Lieutenant Commander Richard K. Del-
mar, JAGC, USNR,* and *Lieutenant Com-
mander William A. DeCicco, JAGC, USN*
(on brief).

For Appellee: *Lieutenant David O. Vol-
lenweider, III, JAGC, USNR* (argued);
*Captain W. J. Hughes, JAGC, USN,* and
*Lieutenant Sandra R. Ganus, JAGC,
USNR* (on brief).

## Opinion of the Court

COX, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of conspiracy to commit larceny, larceny, and housebreaking, in violations of Articles 81, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 934, respectively. His approved sentence extends to a bad-conduct discharge, confinement at hard labor for 2 years, and forfeiture of all pay and allowances. We granted review of this issue concerning the conspiracy charge:

> WHETHER THERE IS INSUFFICIENT EVIDENCE AS A MATTER OF LAW THAT THERE WAS AN AGREEMENT TO COMMIT LARCENY.

We hold as a matter of law that the evidence was sufficient; accordingly, we affirm.

### I

Seaman Recruit Lloyd Hailes, the alleged co-conspirator, testified under a grant of immunity that he first met appellant at a restaurant on Naval Station, Norfolk, Virginia, on the morning of December 22, 1981. According to Hailes, their conversation quickly led to a discussion of their respective financial difficulties. Hailes suggested that they go to Carter Hall, enlisted quarters located on the Naval Station, where they might find someone who would lend them some money. Appellant agreed.

Upon arriving there, Hailes waited in the lobby, allegedly to look for prospective lenders, while appellant "went around the corner." Shortly thereafter, Hailes heard appellant calling for him. Going to investigate, he found appellant

> at the door to this room which was D–103 in Carter Hall and he was telling me come on, you know, just come on, so I went down there to see what he wanted and by the time I got to the room he was in there—he was stuffing some clothes and stuff in a seabag, and I saw him doing that and I knew he was stealing the clothes, you know, 'cause the way it

looked, you know, and the way he was acting, you know, it was obvious to me that, you know, hey, this guy is stealing.

Spotting a television set in the room, Hailes immediately decided to get in on the action. Together, the two placed the television in a large box. According to Hailes:

[W]e helped carry the box out because it was too heavy for one person to carry and I told him I was going to take the television down to the pawn shop so we could pawn it, you know, and get some money off of it, you know. That was the best thing to do. I didn't want, you know, to just keep holding no television and I didn't want, you know, to publicize it, so I said let's just take it down to the pawn shop and get some money off of it.

This they did and then split the proceeds between them. They also went to a bus station restroom, where they put on some of the stolen clothing.

## II

Inasmuch as this Court may "take action only with respect to matters of law," Article 67(d), UCMJ, 10 U.S.C. § 867(d), it is not our function to reweigh conflicting testimony. Where a challenge to the sufficiency of the evidence has been lodged, our inquiry is:

whether there is, in the record, some competent evidence from which the members of the courtmartial, or the military judge in a trial by judge alone, could find, *beyond a reasonable doubt*, the existence of every element of the offense charged.

*United States v. Taylor*, 21 U.S.C.M.A. 220, 222, 44 C.M.R. 274, 276 (1972). *See also United States v. Wilson*, 6 M.J. 214,

215 (C.M.A. 1979); *United States v. Brown*, 3 M.J. 402, 403 (C.M.A. 1977).

The elements of conspiracy are:

(*a*) That the accused and one or more persons named or described entered into an agreement;

(*b*) that the object of the agreement was to commit an offense under the code; and

(*c*) that one or more of the persons named or described performed an act to effect the object of the conspiracy, as alleged.

Para. 160, Manual for Courts-Martial, United States, 1969 (Revised edition). *See United States v. Mukes*, 18 M.J. 358, 359 (C.M.A. 1984); *United States v. Collier*, 14 M.J. 377 (C.M.A. 1983). Thus, the precise question in this case is whether there is some competent evidence that appellant and Hailes entered into such an agreement.

■ Here, the military judge had before him evidence indicating *at a minimum*[1] that appellant invited Hailes to join in an on-going[2] criminal enterprise, and that Hailes accepted with relish. Further, there was evidence suggesting that the asportation of the television set could not have been accomplished but for the concert of action. Finally, there was evidence that the two carried the operation to fruition together and shared in the spoils equally.

■] A conspiratorial agreement need take no particular form or be manifested in any formal words. Para. 160, Manual, *supra*; *Wharton's Criminal Law* § 726 (C.Torcia 14th ed. 1981); 16 Am Jur 2d, *Conspiracy* § 10 (1979). "Nor is it necessary that each conspirator know all the details of the criminal plan, the part to be played by each conspirator, or the division of the spoils." *Wharton's, supra*, at pp.

---

1. It could also reasonably be inferred from the circumstances that Hailes was acting as a lookout for appellant when he tarried in the lobby and, thus, that a criminal agreement preceded their arrival at Carter Hall.

2. The agreement must occur contemporaneously with or prior to the underlying offense, here larceny. Para. 160, Manual for Courts-Martial, United States, 1969 (Revised edition). The of-

fense of larceny continues until the original asportation is completed. *United States v. Chambers*, 12 M.J. 443, 447 (C.M.A. 1982). Here the asportation apparently did not terminate until appellant and Hailes arrived in downtown Norfolk. Thus, the same evidence that tended to establish the existence of the agreement also tended to show that it occurred prior to the taking from the room.

533–34 (footnote omitted). *See also United States v. Feola*, 420 U.S. 671, 692, 95 S.Ct. 1255, 1268, 43 L.Ed. 2d 541 (1975); *Blumenthal v. United States*, 332 U.S. 539, 556–58, 68 S.Ct. 248, 256–57, 92 L.Ed. 154 (1947); *United States v. Dunbar*, 12 M.J. 218, 220 (C.M.A. 1982).

Under these circumstances, there can be no question but that there was at least "some competent evidence" from which the judge could have found, beyond a reasonable doubt, the existence of a criminal agreement. Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.