UNITED STATES, Appellee

V.

John A. WHITTEN, Staff Sergeant
U.S. Army, Appellant

No. 01-0243

Crim. App. No. 9900373

_____

United States Court of Appeals for the Armed Forces

Argued October 24, 2001

Decided January 14, 2002

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON and BAKER, JJ., and
SULLIVAN, S.J., joined.

Counsel

For Appellant:  Captain Stephanie D. Sanderson (argued); Colonel
    Adele H. Odegard, Lieutenant Colonel David A. Mayfield, Major
    Jonathan F. Potter, and Captain Katherine A. Lehmann (on
    brief); Major Imogene M. Jamison.

For Appellee:  Captain Susana E. Watkins (argued); Lieutenant
    Colonel Edith M. Rob and Major Daniel G. Brookhart (on
    brief); Colonel Steven T. Salata.

Amicus Curiae: Samantha Schoell (law student)(argued); Karen L.
    Hecker (supervising attorney)(on brief)--For the Columbus
    School of Law, Catholic University of America.

Military Judge:  Robert F. Holland


**This opinion is subject to editorial correction before publication**.

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, on mixed pleas, of conspiracy to commit larceny, wrongful disposition of military property, larceny, and wrongful appropriation of military property, in violation of Articles 81, 108, and 121, Uniform Code of Military Justice, 10 USC §§ 881, 908, and 921, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for four months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. This Court granted review of the following issue:

> WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE FINDINGS OF GUILTY TO THE OFFENSES OF CONSPIRACY TO COMMIT LARCENY (THE SPECIFICATION OF CHARGE I) AND LARCENY (SPECIFICATION 1 OF CHARGE III) BECAUSE THE CONSPIRACY AND LARCENY WERE COMPLETED BEFORE APPELLANT BECAME INVOLVED IN THE SITUATION.

For the reasons set out below, we affirm.[1]

## Facts

Specialist (SPC) Mark Rodbourn and Private First Class (PFC) Joshua McCarus agreed to help appellant move from his off-post trailer park to on-post military housing. As they drove through appellant's trailer park in McCarus's car, they noticed a military duffel bag lying unattended behind a vehicle in a parking area. They "drove back around" a second time, took the duffel bag, and put it in the car.

---

[1] This case was argued at the Columbus School of Law, Catholic University of America, Washington, D.C., as part of the Court's Project Outreach. See United States v. Allen, 34 MJ 228, 229 n. 1 (CMA 1992).

Rodbourn testified that they parked "past [appellant's] house a little bit," in case someone had seen McCarus's car. McCarus testified that they parked "[a] little bit away from his house," because he thought appellant would be moving with a truck and trailer and he "didn't want to get it scratched, or anything."

The owner of the duffel bag, PFC Timothy Campbell, testified that his neighbor ran up to him and said, "Somebody just took off with your stuff." When the neighbor said that she could recognize the car and its occupants, they drove around and found it within "45 seconds to a minute." The car was "about six houses away." He knocked on the door of the nearest trailer, but no one answered. He knocked on the doors of the neighbors, but no one recognized the car. At that point, PFC Campbell called the police, who arrived in fifteen to twenty minutes.

Rodbourn and McCarus both testified that they told appellant about the duffel bag while they were at his trailer, but they did not recall appellant saying anything in response. Rodbourn testified that while they were waiting for another person to arrive to assist in the move, they noticed that the owner of the duffel bag had parked his car behind McCarus's car, blocking it in, and the police were in the area.

When the police left, Rodbourn and McCarus "got in McCarus's car real quick" and followed appellant to Sergeant First Class (SFC) Lund's house to pick up a trailer. At Lund's house, Rodbourn, McCarus, and appellant opened the duffel bag, dumped the contents on the lawn, "inventoried" them, and decided what items each would keep. The duffel bag contained military

equipment, uniforms, and personal items. They threw away the personal items. Appellant ripped the name tapes off the uniforms and spray-painted over Campbell's name on the duffel bag. They put the items to be distributed among themselves back into the duffel bag and put the bag in McCarus's car. Rodbourn and McCarus then followed appellant to his new on-post quarters, where they left it. Rodbourn testified that they left the duffel bag at appellant's quarters because McCarus's car had already been identified and "they'[d] find it in the barracks."

McCarus and appellant had also been involved in a theft of ammunition left over from a gunnery training exercise. As the investigations into the stolen ammunition and stolen duffel bag intensified, appellant took the stolen duffel bag and the stolen ammunition to a wooded area and attempted to conceal them. McCarus, Rodbourn, and appellant agreed that McCarus and Rodbourn would take the blame for the theft of the duffel bag, and appellant would take the blame for the ammunition.

At the conclusion of the prosecution case, the defense made a motion for a finding of not guilty, arguing, "The larceny was completed before [appellant] ever even laid eyes on [the duffel bag]." Defense counsel conceded that, if appellant was guilty of anything, he was guilty of being an accessory after the fact or receiving stolen property. Trial counsel argued that the larceny was not completed until they divided the contents of the duffel bag among themselves. Neither side presented any legal authority to support their arguments. The military judge denied the motion without explanation.

## Discussion

Appellant now asserts that the conspiracy, as well as the larceny, were completed before appellant became involved. He argues that larceny continues only "until such time as its fruits are secured in a place where they may be appropriated to the use of the perpetrator of the scheme." United States v. Seivers, 8 MJ 63, 65 (CMA 1979), citing United States v. Escobar, 7 MJ 197 (CMA 1979). The Government argues that asportation of the stolen property continued until the property reached its final hiding place in appellant's on-post quarters. Amicus curiae argues there was no evidence that Rodbourn and McCarus formed a conspiracy to steal the property; and that appellant could not have conspired with Rodbourn and McCarus to steal the property because the larceny was complete before appellant became involved with the stolen property. The question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of [conspiracy and larceny] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The elements of conspiracy are:

> (1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and

> (2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.

Para. 5b, Part IV, Manual for Courts-Martial, United States (2000 ed.).[2]  "Each conspirator is liable for all offenses committed by any of the co-conspirators while the conspiracy continues and the person remains a party to it."  Id. at para. 5c(5).

The formation of a conspiracy "need not take any 'particular form or be manifested in any formal words.'"  The agreement can be "silent, . . . 'tacit[,] or [only a] mutual understanding between the parties.'"  It "is usually manifested by the conduct of the parties themselves."  United States v. Barnes, 38 MJ 72, 75 (CMA 1993) (internal citations omitted.)  A conspirator who joins an existing conspiracy "can be convicted of this offense only if, at or after the time of joining the conspiracy, an overt act in furtherance of the object of the agreement is committed."  Para. 5c(1), Part IV, Manual, supra.  Thus, the prosecution was required to prove that appellant joined an ongoing conspiracy between Rodbourn and McCarus, and that after he joined the conspiracy, an overt act in furtherance of the larceny of the duffel bag was committed.

The elements of larceny are:

> (1) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;
>
> (2) That the property belonged to a certain person;
>
> (3) That the property was of a certain value, or of some value; and
>
> (4) That the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for

_____

[2] All provisions of the Manual are the same as those in effect at the time of appellant's court-martial.

>         the use of the accused or for any person other than the
>         owner.

Id. at para. 46b.

To prove larceny, the prosecution was required to prove that appellant joined an ongoing conspiracy to commit larceny, as discussed above, or that he aided and abetted an ongoing larceny being committed by Rodbourn and McCarus. See Art. 77, UCMJ, 10 USC § 877 (person who aids and abets the commission of an offense is criminally liable as a principal).

The pivotal factual issue at trial involved asportation of the property. The crime of larceny by taking continues as long as asportation of the property continues. Escobar, 7 MJ at 199, citing United States v. Barlow, 470 F.2d 1245, 1253 (DC Cir. 1972). "[F]actually the original asportation continues as long as the perpetrator is not satisfied with the location of the goods and causes the flow of their movement to continue relatively uninterrupted." Id. at n. 4.

The prosecution theory was that appellant joined the conspiracy while asportation was continuing. The defense theory was that asportation was completed when Rodbourn and McCarus put the duffel bag in the car and parked the car.

With respect to the conspiracy, the specific issue before this Court is whether any rational factfinder could have found beyond a reasonable doubt:

(1) That Rodbourn and McCarus formed a conspiracy to steal Campbell's duffel bag and its contents;

(2) That they took the duffel bag;

(3) That appellant joined the conspiracy before Rodbourn and McCarus were "satisfied with the location of the goods" and while the movement of the goods continued "relatively uninterrupted"; and

(4) That an overt act in furtherance of the agreement to steal the duffel bag was committed after appellant joined the conspiracy.

With respect to the larceny, the specific issue is whether any rational factfinder could have found beyond a reasonable doubt that appellant joined an ongoing conspiracy to commit larceny or aided and abetted the larceny before Rodbourn and McCarus were "satisfied with the location of the goods" and while the movement of the goods continued "relatively uninterrupted."

The evidence of record, viewed in the light most favorable to the prosecution, reflects the following:

(1) That Rodbourn and McCarus decided to steal the duffel bag after they saw it unattended and circled the area a second time;

(2) That almost immediately after they took the duffel bag, Rodbourn and McCarus became concerned that McCarus's car had been identified;

(3) That within minutes, they knew that McCarus's car had been identified and the police notified of the theft;

(4) That within minutes, they decided that the stolen property could not be kept in the car or the barracks;

(5) That, at the first opportunity, they moved the car and the duffel bag to SFC Lund's house;

(6) That, at SFC Lund's house, appellant participated in the division of property, removed Campbell's identification from some of the items, and identified which items he wanted to keep for himself;

(7) That appellant, Rodbourn, and McCarus did not know the exact contents of the duffel bag and did not decide what items they wanted to keep until they "inventoried" it at SFC Lund's house; and

(8) That after appellant, Rodbourn, and McCarus divided the property and threw away the items they did not want, appellant agreed to hide the stolen property in his new on-post quarters.

Based on this evidence, we hold that a rational factfinder could have found beyond a reasonable doubt that Rodbourn and McCarus formed an agreement, manifested by their conduct, to steal the duffel bag after initially seeing it and then circling back around to take it; that appellant joined the ongoing conspiracy to steal Campbell's duffel bag and its contents; and that several overt acts in furtherance of the conspiracy were committed after he joined it: inventory and division of property, removal of identifying markings and name tapes, and further transportation to appellant's quarters for safekeeping. We further hold that a rational factfinder could have found beyond a reasonable doubt that appellant aided and abetted in the larceny before asportation of the stolen property was complete. Accordingly, we hold that the evidence is legally sufficient to support appellant's convictions of conspiracy and larceny.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.