UNITED STATES

v.

**Airman First Class Christopher L. McAFEE, United States Air Force.**

**ACM 36340.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 12 April 2005.

15 March 2007.

Appellate Counsel for Appellant: Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, and Major John N. Page III.

Appellate Counsel for the United States: Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and Major Michelle M. McCluer.

Before ORR, Senior Judge, MATHEWS, and PETROW, Appellate Military Judges.

OPINION OF THE COURT

PETROW, Judge:

The appellant was convicted in accordance with his pleas of conspiracy to use cocaine, drunk driving, use of cocaine, and introduction of cocaine onto a military installation, in violation of Articles 81, 111, and 112a, UCMJ, 10 U.S.C. §§ 881, 911, and 912a. A general court-martial, composed of officer members, sentenced the appellant to a bad-conduct discharge, total forfeitures, and reduction to E–1. The convening authority reduced the forfeitures to $823.00 pay per month until the execution of the bad-conduct discharge, and disapproved the finding of guilty as to, and dismissed, the introduction of cocaine onto a military installation specification. On appeal, the appellant asserts that his plea of guilty to the conspiracy charge was improvident in

that the overt act in furtherance of the alleged conspiracy occurred before the formation of any agreement that had a criminal purpose. Appellant asks this Court to dismiss the conspiracy specification and charge. We find that the plea of guilty to the conspiracy charge was provident and affirm.

### Background

The alleged overt act of the conspiracy consisted of the appellant's consenting to allow his friend, Airman First Class (A1C) P, to use the appellant's vehicle to drive to an off-base location so that A1C P could purchase cocaine for his own use. According to the appellant's testimony, one night in late March 2004, A1C P entered the appellant's dorm room asking if the appellant could drive him downtown. The appellant at first declined, stating that he was too drunk. When A1C P offered to drive, the appellant consented to the use of his vehicle providing he could accompany A1C P. After they had driven off-base, the appellant asked where they were going. A1C P replied he was going downtown to purchase cocaine. The appellant testified that he had no objection to the trip's purpose—A1C P's purchase and use of cocaine—and acquiesced in the use of his car to accomplish that objective. The cocaine was then purchased and used by A1C P.

### Discussion

■ If an accused, after entering a guilty plea, sets up matter inconsistent with the plea the court shall proceed as though he had pleaded not guilty. Article 45(a), UCMJ, 10 U.S.C. § 845(a). On appeal, we review the military judge's acceptance of the plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996) (citing *United States v. Gallegos*, 41 M.J. 446 (C.A.A.F.1995)). A providence inquiry into a guilty plea must establish "not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea." *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994) (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)). *See also United States v. Rothenberg*, 53 M.J. 661, 662 (A.F.Ct.Crim.App.2000). Mere conclusions of law recited by an accused are

insufficient to provide a factual basis for a guilty plea. *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F.1996) (citing *United States v. Terry*, 45 C.M.R. 216, 1972 WL 14158 (C.M.A.1972)).

■ The appellant argues that the alleged overt act consisted of his allowing A1C P to use the appellant's car. Since it was only after the appellant had consented to the use of his car and he and A1C P were on their way downtown that the appellant learned the purpose of the trip was to purchase cocaine, the appellant espouses an *ex post facto* theory to defeat the conspiracy finding. Of course, this suggests that had the appellant known the purpose of the trip ab initio, the conspiracy would have been well-formed. Since the appellant is thus deemed to have controlled the nature and purpose of the vehicle's use at the launching of the escapade, we are at a loss to understand how he managed to lose his controlling interest in mid-course upon learning that A1C P's intended purpose for the trip was to purchase cocaine. In the absence of protest, we must conclude that the appellant consented to the use of the vehicle for that purpose at that time, and that it was from that time onwards that the conspiracy existed. The formation of a conspiracy "need not take any 'particular form or be manifested in any formal words' " ... the agreement can be "silent, ... 'tacit[,] or [only a] mutual understanding between the parties' ", and it "is usually manifested by the conduct of the parties themselves." *United States v. Whitten*, 56 M.J. 234, 236 (C.A.A.F.2002) (quoting *United States v. Barnes*, 38 M.J. 72, 75 (C.M.A.1993) (internal citations omitted)). Accordingly, we find the appellant's argument to be without merit.

Nonetheless, we have a concern with the providence of the conspiracy plea. Article 81, UCMJ, uses the word "conspires"—a word which had been repeatedly construed to require a common criminal purpose by at least two persons. *United States v. Valigura*, 54 M.J. 187, 190 (C.A.A.F.2000).

> "Conspiracy, like all crimes, is defined by the defendant's *mens rea* and *actus reus*, the defendant's mental state, and the act performed. The *mens rea* required for conspiracy includes both the conscious pur-

pose to conspire and the conscious purpose to commit the substantive offense ..... The United States Code section on conspiracy, 18 USC § 371, takes a bilateral approach to the crime ... [meaning] that for an agreement to be found, both parties must intend to commit the substantive offense."

*Id.* at 192 (Crawford, C.J., dissenting). *See also, United States v. Roeseler*, 55 M.J. 286, 290–91 (C.A.A.F.2001).

We are at a loss to understand why the government elected to base the conspiracy offense on use rather than possession. When the military judge attempted to ascertain the appellant's intent with regard to the substantive offense, the use of cocaine, the record is ambiguous at best:

Q: Okay, so both of you are in the car and you have left Barksdale and you are driving downtown?

A: Yes, ma'am.

Q: Downtown meaning, downtown Shreveport, Louisiana?

A: Shreveport, yes ma'am.

Q: And, he tells you, what?

A: Just that he was going to *pick up* Cocaine.

(emphasis added)

. . . .

Q: Why don't you tell me in your own words, why you believe you are guilty of conspiracy?

. . . .

A: [S]pecifically, I rode with [A1C P] in my car so he could get Cocaine for us .... I let A1C [P] drive my car with me riding along as a passenger, so A1C [P] could purchase Cocaine off-base.

. . . .

Q: I want to make sure you understand this. You are charged with conspiracy to commit wrongful use of Cocaine, not conspiracy to purchase Cocaine.

. . . .

Q: The offense of wrongful use of Cocaine does not have to actually be completed, in order for you to be guilty of the conspiracy. However, the agreement must have included every element of the offense of wrongful use of Cocaine. So, the conspiracy must include an agreement that you were going to use this Cocaine. Again, you didn't have to specifically use it.

A: No, ma'am, the agreement was that [A1C P] was going to purchase Cocaine *and use it.*

(emphasis added)

Q: And, that he was going to use it?

A: Yes, ma'am.

Q: Well, now you have used Cocaine that [A1C P] has supplied in his room, on at least one other occasion, before this event and on at least three occasions, you have used Cocaine supplied by Airman [G], so were you going to perhaps use that Cocaine? I know that you did not use it, but were you thinking that you might use it?

A: No, ma'am, not at that point.

Q: But, you did, in fact, use Cocaine with [A1C P] after this event?

A: On another occasion, yes, ma'am.

Q: So, how do you know if that was that Cocaine that he purchased that night or not?

A: I saw it and he told me that he smoked it that night afterwards.

Q: So, you saw him and he told you that he actually used all the Cocaine that he had purchased when driving your car?

A: Yes, ma'am.

Initially, the appellant's testimony indicates that it was the intent of A1C P to go downtown to *purchase* cocaine, and the appellant's intent to assist him in doing so through the use of his car. At one point, the appellant indicates that the purpose of the trip was for A1C P to purchase cocaine for the two of them. However, the appellant then claims that he had no intention to use the cocaine, apparently never came in contact with it, and only learned later that A1C P had actually used the cocaine. Nonetheless, the appellant does eventually state that the agreement was that A1C P "was going to purchase Cocaine *and use it.*" A1C P's testimony is of little assistance in this regard:

MJ: [A1C P], when you asked the [appellant] to borrow his vehicle to take it down-

town, when you wanted to purchase the Cocaine—

WIT: Yes, ma'am?

Q: Did you, in fact, tell [appellant] why you wanted to go downtown in his vehicle?

A: No, ma'am, not that I recall.

Also of concern is the condition of the appellant on the night in question, calling into question the ability of the appellant to accurately recall what transpired that night. A1C P provided a very vivid description:

A: I went to his room and [appellant] was really intoxicated.

Q: About what time [was] that?

A: Nine or ten maybe on a weekend [sic]. He was really intoxicated, laying on his floor watching TV. I went to his room and asked him if I could borrow his car. He told me—at first he told me that I couldn't use it unless he was with me. Then I was like, "Well, that is fine, you can get in the car and we'll go." So, he got in the car. Going down the hallway, he ran into the wall and he slipped on the steps going down. I finally got him to the car, got off-base. I was heading downtown and I noticed that he was in and out during most of the ride. He was passing out, dozing off or waking up. I got the drugs and came back to the base. Went [sic] and parked his car and he told me he was heading to his room. I asked him if he was going to come with me, and he just told me, no, he was going to his room to crash.

. . . .

Q: Was [the appellant] was awake was he coherent?

A: A little. He wasn't very—he wasn't paying attention, I don't believe. He would wake up. I was listening to the radio when he would just blurt out a comment. I mean, I couldn't tell you what it was. I mean, he would have me laughing.

Q: It was in relationship to what he heard on the radio?

A: I don't think so, I think it was just from being intoxicated, your honor.

### Conclusion

Faced with the evidence adduced above, we must determine whether the military judge's acceptance of the appellant's guilty plea to the conspiracy charge was an abuse of discretion. "[A]buse of discretion" occurs only when the decision of the military judge is arbitrary, clearly unreasonable, or clearly erroneous. *United States v. Grant*, 38 M.J. 684, 688 (A.F.C.M.R.1993). In resolving legal sufficiency questions, the appellate court is bound to draw every reasonable inference from the evidence of record in favor of the prosecution. *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F.2000). Clearly, the military judge was able to elicit from the appellant that the agreement with A1C P was that he "was going to purchase Cocaine *and use it.*" Accordingly, we find that there was a sufficient basis for the military judge to accept the appellant's guilty plea to the conspiracy offense and that no abuse of discretion occurred.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.

Senior Judge ORR participated in this decision prior to his reassignment.