# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and RODRIGUEZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class TIMOTHY J. EVANS**
**United States Army, Appellant**

ARMY 20180651

Headquarters, Fort Bragg
Fansu Ku, Military Judge
Lieutenant Colonel Jeffrey S. Thurnher, Staff Judge Advocate

For Appellant:  Captain Loraima Morciglio, JA; Allison R. Weber, Esquire (on brief); Captain Thomas J. Travers, JA; Allison R. Weber, Esquire (on reply brief).

For Appellee:  Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Reanne R. Wentz, JA (on brief).

29 October 2020

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

RODRIGUEZ, Judge:

Appellant, a married father of three children, engaged in a gang-style sexual assault of a fellow soldier, Private First Class (PFC) HS, along with three other soldier–confederates, Specialist (SPC) Anthony Rodriguez, PFC Brody S. Blaker, and PFC Adam T. Leathorn.  Following the sexual assaults of PFC HS, appellant, SPC Rodriguez, and others exchanged messages and hatched a plan about how to evade justice for their actions by misleading law enforcement.  The plan failed, and all four soldiers were eventually prosecuted and convicted for assaulting PFC HS.

For his misconduct, an enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of conspiracy to obstruct justice and one specification of sexual assault, in violation of Articles 81 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 920 (2016)

EVANS—ARMY 20180651

[UCMJ].  With a penalty landscape that included possible confinement for thirty-five years, the members sentenced appellant to a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.  The convening authority approved the sentence as adjudged.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises a multitude of errors, with additional issues embedded throughout his brief.  While none of them merit relief, we address two, specifically appellant's claim that his conviction for conspiracy to obstruct justice is factually and legally insufficient and his claim that his sentence is disproportionately severe as compared to the sentences adjudged at his associates' courts-martial.[1]

## BACKGROUND

### A.  *The sexual assaults of PFC HS.*

On 9 June 2017, appellant attended a party at SPC Rodriguez's residence.  Other attendees included PFCs Blaker, Leathorn, HS, and SJ.  At the party, PFC HS consumed beer and liquor.  She became severely intoxicated to the point where she needed assistance moving around and lost memory for the latter portion of the

---

[1] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be worthy of neither discussion nor relief.  We have also given full and fair consideration of appellant's "shotgun blast of alleged errors" claiming that his trial defense team provided ineffective assistance of counsel.  *United States v. Myer*, ARMY 20160490, 2019 CCA LEXIS 13, *13 (Army Ct. Crim. App. 10 Jan. 2019) (mem. op.).  As a reviewing court, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  We are also "constrained by the principle that strategic choices made by trial defense counsel," including which witnesses to call and what objections to make, are "'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland*, 466 U.S. at 690–91).  Having considered the entire record, along with the affidavits of appellant's two trial defense counsel submitted pursuant to court order, we find appellant fails to establish either deficient performance or prejudice.  *See United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (placing the burden on an appellant to demonstrate both deficient performance and prejudice).

evening. After PFC HS became intoxicated, SPC Rodriguez led her to his bedroom to fulfill his plan to have sex with her.

Specialist Rodriguez helped PFC HS undress because she was not coordinated enough to do it herself. He then engaged in sexual intercourse with PFC HS who, at that point, was not responsive. Private First Class Blaker then entered the room. First he penetrated PFC HS's mouth with his penis; he then penetrated her vagina with his penis.

After PFC Blaker finished, appellant and PFC Leathorn, in turn, penetrated PFC HS's vagina with their penises. Private First Class HS remained non-responsive throughout the multiple sexual assaults. After all of the soldiers were finished assaulting PFC HS, PFC Blaker helped PFC HS get dressed and escorted her out of the bedroom. Once in the hallway, PFC HS fell over. Private First Class Blaker helped her up and moved her to his truck. Appellant had already left SPC Rodriguez's residence by the time PFC Blaker departed with PFC HS.

### B. The efforts to cover it up.

In the months that followed, rumors started to spread around the unit concerning the events of 9 June 2017. Fearing what a law enforcement investigation into those events might uncover, SPC Rodriguez convened a meeting to try to get everyone on the same page. Appellant was not present for the in-person meeting, but was looped into the plan via a nearly two-hour group text message exchange that occurred on 27 September 2017. Specifically, the group agreed that, if questioned by law enforcement, they would say PFC HS became intoxicated and slept on appellant's bed. Specialist Rodriguez reminded the group that if any of them said "something other than the story or admit to anything we are all literally fucked."

The group also discussed what to tell law enforcement concerning who was drinking alcohol at SPC Rodriguez's party. Twenty minutes into the group text conversation, appellant sent a message to the group asking, "So if they ask if we saw not only [PFC HS] drinking but others ? Yes or no ?" Specialist Rodriguez replied to appellant with, "Yes." Appellant then responded to SPC Rodriguez with, "Ok," and SPC Rodriguez sent a group text message indicating that PFC SJ (who attended the party but did not sexually assault PFC HS), had to say that he was not drinking at the party because "a sober witness will really help everything go smooth."

When subsequently questioned by law enforcement, SPC Rodriguez initially lied by providing the previously agreed-upon story. Later in the interview, however, he changed his version of events.

*C. The trials and sentences of appellant's co-actors.*

As the law enforcement investigation proceeded, the walls quickly began to close in on appellant and his fellow assailants.

Recognizing the gravity of the situation, SPC Rodriguez acted first and secured a deal with the convening authority. He agreed to plead guilty to sexually assaulting PFC HS and provide testimony against appellant and PFCs Blaker and Leathorn. In exchange, the convening authority agreed to a quantum of confinement of no more than six months. On 5 June 2018, SPC Rodriguez was convicted, consistent with his pleas, of one specification of sexual assault against PFC HS. The military judge adjudged a sentence that included confinement for fifteen years, though the convening authority, consistent with the pretrial agreement, approved only six months of confinement.

Private First Class Blaker's court-martial occurred next. After entering mixed pleas, PFC Blaker was convicted of two specifications of sexual assault against PFC HS, one specification of conspiracy, and one specification of obstructing justice. On 16 November 2018, the members adjudged a sentence that included confinement for two years.

Appellant was tried after PFC Blaker's court-martial concluded. Private First Class Leathorn was the last of the group to stand trial. At his fully contested members trial, PFC Leathorn was convicted of one specification of sexual assaulting PFC HS, two specifications of conspiracy, and one specification of obstructing justice. On 23 January 2019, the members adjudged a sentence that included confinement for five years.

All four soldiers received mandatory dishonorable discharges.

**LAW AND DISCUSSION**

*A. Appellant's conspiracy conviction.*

Appellant asserts his conviction for conspiring to obstruct justice is factually and legally insufficient. We review these claims de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The President has listed two elements for the crime of conspiracy under Article 81, UCMJ: (1) that the accused entered an agreement with one or more persons to commit an offense under the UCMJ; and (2) that, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused *or at least one of the co-conspirators* performed an overt act for the purpose of bringing about the object of the conspiracy. *Manual for Courts-Martial*, *United States* (2016 ed.) [*MCM*], pt. IV, ¶ 5.b.(1) (emphasis added).

Concerning the first element of the agreement, the *MCM* elaborates:

> The agreement . . . need not be in any particular form or manifested in any formal words. It is sufficient if the minds of the parties arrive at a common understanding to accomplish the object of the conspiracy, and this may be shown by the conduct of the parties.

*MCM*, pt. IV, ¶ 5.c.(2). Our superior court has further stated that an agreement can be "silent, . . . 'tacit[,] or [only a] mutual understanding between the parties.'" *United States v. Whitten*, 56 M.J. 234, 236 (C.A.A.F. 2002) (quoting *United States v. Barnes*, 38 M.J. 72, 75 (C.M.A. 1993)) (alterations in original). The "existence of a conspiracy is generally established by circumstantial evidence and is usually manifested by the conduct of the parties themselves." *United States v. Matias*, 25 M.J. 356, 362 (C.M.A. 1987) (citing *United States v. Jacobs*, 451 F.2d 530, 535 (5th Cir. 1971)). It "need not be expressed but need only be implied." *Id.* Finally, "a conspirator need not be a member of the scheme from its inception, but he may join it along the way." *Id.* (citing *United States v. Jackson*, 20 M.J. 68, 69 (C.M.A. 1985)).

Concerning the second element of the overt act, the *MCM* states:

> The overt act must be independent of the agreement to commit the offense; must take place at the time of or after the agreement; . . . and must be done to effectuate the object of the agreement.

*MCM*, pt. IV, ¶ 5.c.(4)(a).

Here, the government was required to prove that appellant entered into an agreement with SPC Rodriguez and others to commit the offense of obstruction of justice and that at or after the time of the agreement, SPC Rodriguez committed an overt act in furtherance of the conspiracy by communicating a plan to the group to

lie to law enforcement about the events of 9 June 2017. We conclude the evidence is both factually and legally sufficient to sustain appellant's conviction.

### 1. The agreement.

Reading SPC Rodriguez's testimony and reviewing the text messages exchanged between SPC Rodriguez, appellant, and others, it is clear to us that the purpose of the text message discussion was to concoct a standardized—and false— version of events that all participants would, if necessary, convey to law enforcement in order to mislead law enforcement. The record is unclear as to when the initial in-person meeting occurred between SPC Rodriguez and the others, though it is clear that appellant did not attend that meeting in person. Assuming appellant did not join the agreement by virtue of his absence from the in-person meeting, we nevertheless conclude he joined the agreement through his receipt, acknowledgement, and active participation in the text message discussion on 27 September 2017. From the opening text message admitted into evidence, the purpose of the discussion was clear—to get everyone on the same page.

Even if appellant's participation in the discussion by responding and asking clarifying questions was not enough to constitute "express" evidence of his joining the agreement, we conclude his joining the agreement was at least "implied." *Matias*, 25 M.J. at 362. We further conclude that appellant's affirmative action of replying and asking clarifying questions about what to say and how to answer questions permits a reasonable inference that he understood and adopted the content of the previous messages. Reading the exchanges between the parties, the evidence shows that appellant and the other parties had "arrive[d] at a common understanding to accomplish the object of the conspiracy," specifically to obstruct justice by conveying to law enforcement a false version of events. *MCM*, pt. IV, ¶ 5.c.(2).

### 2. The overt act.

We next consider whether SPC Rodriguez committed an overt act in furtherance of the conspiracy. Reading the text message discussion, it shows SPC Rodriguez not only originated the plan to lie to law enforcement, but also communicated the plan to the others in the group and refined the plan throughout the discussion. By communicating the plan to the others and adding additional details and instructions as to how the others should answer specific questions, SPC Rodriguez undoubtedly took affirmative steps to "effectuate the object of the agreement," specifically to obstruct justice by misleading law enforcement. *MCM*, pt. IV, ¶ 5.c.(4)(a).

While the agreement and overt act occurred nearly simultaneously, we are satisfied the overt act occurred independent of the agreement itself. Consequently,

element two of the offense was satisfied. Therefore, we find appellant's conspiracy conviction is both factually and legally sufficient.[2]

### B. *Appellant's sentence.*

We review sentence appropriateness de novo. *United States v. Bauerbach*, 55 M.J. 504 (Army Ct. Crim. App. 2001) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." UCMJ art. 66(c) (2016). "When we conduct a sentence appropriateness review, we review many factors to include: the sentence severity; the entire record of trial; appellant's character and military service; and the nature, seriousness, facts, and circumstances of the criminal course of conduct." *United States v. Martinez*, 76 M.J. 837, 841–42 (Army Ct. Crim. App. 2018).

One of the "many aspects of sentence appropriateness" is so-called "sentence comparison." *Id.* at 840 (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A 1982)). We consider sentence comparison in the overall rubric of sentence appropriateness only in "those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Id.* (internal quotation marks and citations omitted). An appellant seeking sentence comparison relief must show that his sentence is "highly disparate" from a "closely related" defendant's sentence. *Id.* If an appellant is able to show both, the burden shifts to the government to provide a rational basis for the disparity. *Id.* However, an appellant with an otherwise appropriate sentence is not necessarily entitled to a "windfall" just because a co-actor received a more lenient sentence. *Id.* at 841–42.

---

[2] We note The Specification of Charge I alleges that appellant conspired with himself. The military judge, however, did not instruct the panel that they were required to find that appellant conspired with himself. Appellant did not object to the military judge's findings instructions on this basis but contends for the first time on appeal that the military judge erred by failing to instruct the panel that it was required to consider whether appellant conspired with himself. We disagree. First, appellant's failure to object to this finding instruction constitutes waiver. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020). Second, even assuming plain-error review applied, we find no clear and obvious error as it is well-settled that one cannot conspire with himself. *See United States v. Valigura*, 54 M.J. 187, 188 (C.A.A.F. 2000).

We first address whether appellant's actions were closely related with those of SPC Rodriguez and PFCs Blaker and Leathorn. This step in the analysis does not detain us long. Unfortunately, appellant's case is not the first in which multiple soldiers participated in a collective sexual assault of a victim. *See Martinez*, 76 M.J. at 839–40; *United States v. Macario*, ARMY 20160760, 2018 CCA LEXIS 494 (Army Ct. Crim. App. 12 Oct. 2018) (mem. op.). In both of those cases, we found the conduct of the co-actors closely related. Here, appellant and three other soldiers took turns sexually assaulting PFC HS in the same location, on the same evening, and in a similar manner. Accordingly, the government concedes, and we conclude, that their actions are "closely related."

Next we address whether appellant's adjudged sentence was highly disparate in comparison to SPC Rodriguez's and PFCs Blaker's and Leathorn's adjudged sentences. "Whether a sentence is highly disparate is determined by comparison of the adjudged sentences taking into account the disparity in relation to the potential maximum punishment." *Martinez*, 76 M.J. at 841 (citations omitted). Here, the panel sentenced appellant to fifteen years' confinement against a maximum of thirty-five years' confinement, representing 42.8% of the maximum period.

Specialist Rodriguez's adjudged sentence included confinement for fifteen years. The maximum sentence authorized based upon SPC Rodriguez's pleas was confinement for thirty years. As such, SPC Rodriguez's adjudged sentence of confinement represented 50% of the maximum period. We find appellant's sentence is not highly disparate compared to SPC Rodriguez's adjudged sentence.

Private First Class Blaker's adjudged sentence included confinement for two years against a maximum of one-hundred years, representing 2% of the maximum period. PFC Leathorn's adjudged sentence included confinement for five years against a maximum of seventy years, representing 7% of the maximum period. Concerning PFCs Blaker's and Leathorn's sentences, the government acknowledges that appellant has "likely met his burden to prove that his sentence is highly disparate." We agree. As a percentage of the maximum period of confinement, appellant's sentence is twenty-one times higher than PFC Blaker's and six times higher than PFC Leathorn's. As such, based on the facts and circumstances of this case, we find appellant's sentence is highly disparate when compared to PFCs Blaker's and Leathorn's sentences.

Having determined appellant's case is closely related and, with respect to PFCs Blaker and Leathorn, that his sentence is highly disparate, we next address whether the government has provided a rational basis for the disparity. The government argues that the defense's expert witness in mitigation provided a rational basis.

During the defense's presentencing case, Colonel (COL) RM testified about his expertise in assessing recidivism. Based on his expertise and review of the case, COL RM opined during direct examination that appellant had a "low risk or likelihood of reoffending." On cross-examination, however, COL RM stated appellant posed a "higher risk" of reoffending if he was confined for less than ten years. Then, in response to a question from a panel member concerning appellant's empathy, COL RM stated appellant's test scores indicated the "lowest" level of empathy. Based on COL RM's testimony and the panel's evident interest in appellant's remorsefulness for his actions, we conclude the government has offered a plausible, countervailing rationale for the disparity.

Ultimately, however, even assuming *arguendo* that the government could offer no rational basis for the disparity, appellant would still be entitled to no relief. As stated above, sentence comparison is but one aspect of our sentence appropriateness review. *Martinez*, 76 M.J. at 841. The fact that PFCs Blaker and Leathorn received light sentences for similar misconduct "does not transform appellant's otherwise reasonable sentence into an unreasonable one." *Macario*, 2018 CCA LEXIS 494 at *9. Appellant opportunistically joined a gang-style sexual assault of an unconscious soldier and then conspired to cover it up. While his sentence was significantly higher than the sentences of PFCs Blaker and Leathorn, he still received less than half of the maximum period of confinement. Having carefully considered the sentence severity, the entire record of trial, appellant's brief and unremarkable service record, and the seriousness of his offenses, we find his sentence to be appropriate.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence as approved by the convening authority are AFFIRMED.

Chief Judge KRIMBILL and Senior Judge BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

9