### UNITED STATES

v.

### Jeremy D. BRUCE, Sonar Technician (Surface) Third Class (E–4), U.S. Navy.

### NMCCA 200201009.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 6 Nov. 2001.

Decided 24 March 2004.

LT Colin A. Kisor, JAGC, USN, Appellate Defense Counsel.

Maj Patricio A. Tafoya, USMC, Appellate Government Counsel.

Before CARVER, Senior Judge, RITTER, Senior Judge, and REDCLIFF, Appellate Military Judge.

CARVER, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of conspiracy to obstruct justice, false official statement, and four specifications of illegally importing aliens into the United States in violation of 8 U.S.C. § 1324, as incorporated, in violation of Articles 81, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, and 934. The appellant was sentenced to a dishonorable discharge, confinement for 3 years, a fine of $1,000.00, and reduction to pay grade E–1. Pursuant to a pretrial agreement, the convening authority (CA) approved the sentence as adjudged, but suspended confinement over 15 months for a period of 15 months from the date the sentence was announced.

We have carefully considered the record of trial, the three assignments of error, and the Government's response. The appellant contends that his plea of guilty to Specification 1 under Charge III was improvident, that his sentence was inappropriately severe and highly disparate to that of his co-conspirators, and that the CA erred in failing to reference companion cases in his action. We conclude that the findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant and two fellow Sailors, Seaman (SN) Adams and Seaman Apprentice (SA) Beck, became involved in an alien smuggling ring. The appellant pled guilty to driving a vehicle containing illegal aliens across the U.S.–Mexico border on four separate occasions, the last of which resulted in his apprehension. In addition, the appellant gave a false statement about his involvement to the Naval Criminal Investigative Service, and conspired with the other two Sailors to conceal their involvement.

### Improvident Plea

The appellant argues that his plea of guilty to Specification 1 under Charge III (smuggling illegal aliens) is improvident. Specifi-

cally, he asserts that the federal statute to which he pled guilty of violating is a specific intent crime, an element of which he was not advised and to which he did not admit. Appellant's Brief of 5 Aug 2002 at 4–9. We disagree.

The statute at issue provides that the following acts constitute a federal criminal offense:

Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien . . . .

8 U.S.C. § 1324(a)(2)(2000). The military judge advised the appellant that a violation of this statute had the following elements:

First, that at or near the United States Port of Entry at San Ysidro, California, on or about 15 April for Specification 1, 20 April for Specification 2, 23 April for Specification 3, and 24 April for Specification 4, of the year 2001, you brought or attempted to bring to the United States at least one person who was an alien.

The second element is that this alien had not received prior official authorization to come to, enter, or reside in the United States.

The third element is that you knew or were in reckless disregard of the fact that these aliens had not received prior official authorization to come to, enter, or reside in the United States.

The fourth element is that such action was done for the purpose of commercial advantage or for private financial gain.

And the last element is that such action was done in violation of Title 8 of the United States Code, Section 1324(a)(2)(b)(II) [sic], and was done while such section was in effect.

Record at 54–55. The appellant had no objection to these elements.

Clearly, the elements as recited by the military judge closely track the text of the statute. In support of his contention that an additional specific intent element was required, the appellant relies primarily upon a

decision of the Court of Appeals for the Ninth Circuit, *United States v. Barajas–Montiel,* 185 F.3d 947 (9th Cir.1999). We note initially that *Barajas–Montiel* involved the proper jury instructions during a contested trial, not the factual basis for a plea of guilty. The Ninth Circuit, applying its earlier decision in *United States v. Nguyen,* 73 F.3d 887 (9th Cir.1995), explained this specific intent requirement as follows:

> Without a specific intent instruction, the jury does not have to consider whether a defendant intended to violate immigration laws, and therefore the jury could conceivably believe that they had to convict in a case like Mr. Nguyen's where the defendant conceded his involvement in performing the act of alien smuggling but had plausible claims that he nevertheless lacked the intent to violate the law.

*Barajas–Montiel,* 185 F.3d at 953.

■ This requirement by the Ninth Circuit stems from a general disfavor of criminal sanctions for conduct without a corresponding *mens rea. Id.* at 952. We agree that this statute implicitly contains such a requirement. However, the Ninth Circuit's interpretation appears to be more stringent than that of other circuits. The Eleventh Circuit addressed this issue with respect to a prior version of the same statute over 20 years ago:

> Ours is not the first attempt to glean from this statute the elements essential to a conviction under section 1324(a)(1). Although subsection (a)(1) does not specify a requirement of knowledge, as do subsections 2, 3, and 4, that requirement has been judicially recognized. "[A] reasonable construction of section 1324(a)(1) requires guilty knowledge in order to sustain the constitutional validity of the statute." *United States v. Boerner,* 508 F.2d 1064, 1068 (5th Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2418, 44 L.Ed.2d 681 (1975). *See also Bland v. United States,* 299 F.2d 105 (5th Cir.1962). In fact, the issue of criminal intent with respect to section 1324(a)(2) surfaced in *United States v. Herrera,* 600 F.2d 502 (5th Cir.1979), where the court held the exclusion of a phone conversation improper because it was relevant to the

defendant's state of mind. Guilty knowledge and criminal intent are oft times used interchangeably. *See generally* 21 A.L.R. Fed. 254, 262–63 (1974). Nevertheless, they are separate, distinct elements. By our decision in this case, we simply articulate that which is inherent in the prosecution of any serious crime—proof of a general intent to commit an illegal act.

*United States v. Zayas–Morales,* 685 F.2d 1272, 1277 (11th Cir.1982)(footnote omitted). The Eleventh Circuit expressly rejected a specific intent to smuggle as an element, similar to that subsequently adopted by the Ninth Circuit. *Id.* at 1276. We are not bound by the interpretations of federal circuit cases. *See United States v. Blanchard,* 48 M.J. 306, 309–10 (C.A.A.F.1998)(holding that the military judge did not err by failing to strictly follow selected federal decisions in making his authenticity determination.). However, we find the Eleventh Circuit's analysis persuasive, and decline to find any *mens rea* requirement beyond that of a general criminal intent.

■ There is no question regarding the appellant's *mens rea* in this case. The appellant did not assert at any time that he had an innocent motive for his actions. The appellant's responses during the providence inquiry demonstrate that he knew he was participating in illegal activity, and was at least fairly certain it involved the transport of illegal aliens. His self-professed lack of knowledge was brought about by his deliberate ignorance, which is precisely the reason the statute criminalizes both actual knowledge and reckless disregard. During the providence inquiry, the appellant described his knowledge of the presence of illegal aliens in the vehicle he was driving:

> MJ: All right. So Adams asked you if you wanted to make extra money by driving a car across the border from Mexico into the United States?
>
> ACC: Yes, sir.
>
> MJ: And you confirmed with him that there wouldn't be any drugs involved in this?
>
> ACC: Yes, sir.

MJ: Did he tell you or did anyone tell you that there would be aliens involved in this?

ACC: Eventually, sir, that was brought to light, yes, sir.

MJ: Well, when you say eventually, when did you find out?

ACC: *Actually, directly before we came in possession of the car.*

MJ: So before you did this on the 15th of April?

ACC: Yes, sir.

Record at 58 (emphasis added). The military judge later asked follow-up questions on the appellant's knowledge:

MJ: Did you find out, when you were paid, what it was you were transporting, what you had just transported?

ACC: Yes, sir.

MJ: Who told you that?

ACC: Seaman Adams did, sir.

MJ: Let me understand this. The whole time that you were going down to Mexico and even driving across the border into the United States, you never asked Adams or Adams never told you what it was that you were transporting, other than the fact of confirming it wasn't drugs?

ACC: Yes, sir. No, it was—it was hinted about. I had a decent enough idea, but nobody ever came out straight and said that there were people in the trunk, no, sir.

MJ: How was it hinted about?

ACC: I don't really recall. I know I had a basic general idea, but nobody had ever come out and actually said, You're carrying people across the border.

MJ: Did you have a pretty strong idea that that's, in fact, what you were doing, though?

ACC: Yes, sir.

Record at 63–64. The appellant and SN Adams did not look in the trunk of the vehicle prior to driving it across the border.

The appellant's actions are quite similar to those of the defendant in *United States v. McAllister,* 747 F.2d 1273 (9th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985). There, the Ninth Circuit held that:

The evidence in this case was sufficient to support the inference of deliberate ignorance. Several factors suggested a high probability that McAllister knew he was engaged in transporting aliens who had illegally entered within the last three years. These included the suddenness of the trip, the fact that it was made at 2:00 a.m., the lack of a specific destination, and the fact that [a co-conspirator] was traveling to Los Angeles also, but would not accompany the truck. McAllister testified he neither looked in the back of the truck nor asked what it contained. He stated he did not know or attempt to learn [the co-conspirator's] last name. He did not ask where he was going in Los Angeles or how he would return to San Diego. McAllister drove through the truck scales area that was closed, which avoided passing the normal border checkpoint where any aliens who had illegally entered could be discovered. His testimony concerning his reason for doing so was inconsistent and implausible and justified a reasonable inference that he did so because he believed illegal aliens were in the truck. These facts all indicate the defendant tried to close his eyes or ears to what was happening.

747 F.2d at 1276 (internal quotations and citations omitted). Likewise, in this case the appellant knew he was receiving a significant sum of cash for the mere act of driving a car across the border, that he had been recruited by SN Adams because the appellant's California driver's license made him less likely to be stopped at the border, and that the entire venture was coordinated by a Mexican female whose name he did not know. The appellant had the opportunity to look in the vehicle's trunk but consciously elected not to, even when he and SN Adams searched the remainder of the car to make sure there were no drugs in it. We do not read the statute so strictly as to require an explicit admonition from the appellant's co-conspirator that the car contained illegal aliens. The appellant's admissions are adequate support for a finding of reckless disregard.

The providence inquiry sufficiently establishes a factual basis for the appellant's plea of guilty to the offense. *See United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247, 253, 1969 WL 6059 (1969); RULE FOR COURT-MARTIAL 910(E), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). The appellant's deliberate ignorance of the contents of the vehicle, and his equivocal answers during portions of the providence inquiry, do not constitute a "substantial basis" for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). Accordingly, we decline to grant the appellant relief.

**Sentence Disparity and Appropriateness**

The appellant also contends that his sentence is inappropriately severe and highly disparate from the sentence of his co-conspirators, SN Adams and SA Beck. He asks that we disapprove the fine and commute his dishonorable discharge to a bad-conduct discharge. Appellant's Brief at 11.

SN Adams was sentenced to confinement for 3 years, a fine of $1,300.00, and a dishonorable discharge. The CA mitigated the discharge to a bad-conduct discharge in his action. General Court–Martial Order No. 26–02 of 25 Jun 2002. SA Beck was sentenced to confinement for 4 months, forfeiture of $500.00 pay per month for 3 months, a fine of $400.00, reduction to pay grade E–1, and a bad-conduct discharge. The CA, acting upon a clemency recommendation by the military judge, suspended the punitive discharge for a period of 12 months. Special Court–Marital Order No. 01–02 of 4 Mar 2002.

■ Sentence appropriateness involves the " '*individualized* consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.' " *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982)(emphasis added)(quoting *United States v. Mamaluy*, 10 C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81, 1959 WL 3587 (1959)). In raising the issue of sentence disparity, the appellant has the burden of "demonstrating that any cited cases are 'closely related' to his ... case and that the sentences are 'highly disparate.' " *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F.1999); *see also United States v.*

*Olinger*, 12 M.J. 458, 460 (C.M.A.1982). To be closely related, "the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R.1994).

We note that the appellant's case and that of SN Adams were convened by a different convening authority than that of SA Beck. For that reason, SA Beck's case is not technically a companion case. *See United States v. Ortiz*, 52 M.J. 739, 741 (N.M.Ct.Crim.App. 2000). The appellant and SA Beck clearly engaged in some coordinated misconduct, but SA Beck was not involved in the first, and arguably the most important, transaction. Moreover, during his providence inquiry, the appellant indicated that SA Beck likely did not know of the illegal purpose of their trip until after the three were already in Mexico on the date of the second transaction. Record at 68. Nonetheless, we find the three cases to be closely related within the meaning of *Lacy* and *Kelly*.

■ We must next examine whether the appellant's sentence and that of his co-actors are "highly disparate", and whether there is a rational basis for any disparity. *See Lacy*, 50 M.J. at 288; *Kelly*, 40 M.J. at 570. We do not find the appellant's sentence to be highly disparate from that of SN Adams; to the contrary, the two sentences are identical, except SN Adams' fine was more severe. That SN Adams subsequently received clemency from the CA is irrelevant to this determination. We note that different officers took action on the two cases, and that fact alone is a rational basis for the differences at the post-trial stage. Clemency is a matter for the commander's discretion. Art. 60, UCMJ, 10 U.S.C. § 860. We decline to transform an act of mercy in SN Adams' case into a maximum sentence for the appellant.

■ With regard to SA Beck, the appellant received a sentence of confinement for 3 years at a general court-marital, while SA Beck received a sentence of 4 months at a special court-martial. Because these sentences were awarded at different forums, however, it is the initial disposition of the two cases at issue rather than the ultimate sen-

tences received that the appellant must now challenge. *See United States v. Noble,* 50 M.J. 293, 295 (C.A.A.F.1999). Given that the Article 32, UCMJ, investigating officer recommended different forums for the appellant and SA Beck, it is not surprising that the CA followed that course of action. Documents attached to the record from the pretrial investigation show that SA Beck was the first of the co-conspirators to cooperate with law enforcement, and that she was the least involved in the planning of the illegal activity. These are both legitimate reasons for the different dispositions. *Id.* We will not second-guess the CA's decision to treat these two cases differently.

In addition, based upon the entire record, including the case in extenuation and mitigation and the appellant's unsworn statement, we find that the appellant's sentence is not inappropriately severe for these offenses. Art. 66(c), UCMJ.

### Error in Convening Authority's Action

█ Finally, in a summary assignment of error, the appellant contends that the CA's failure to reference companion cases renders the action fatally defective. Appellant's Brief at 11. We disagree.

There is an administrative requirement to cite companion cases in the CA's action. *See* Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C § 0151a(2) (Ch–3, 27 Jul 1998). As previously stated, the case of SA Beck is not a companion case. Therefore, the only error was the failure to cite SN Adams' case in the action. Contrary to the appellant's assertion, this type of administrative error does not render the action fatally defective. The appellant has not established whether the JAG-MAN creates for the appellant a substantive right which is enforceable on appeal, or merely serves as guidance in the preparation of the record of trial. Examination of the JAGMAN convinces this Court that the section relied upon by the appellant is addressed to the CA and is meant to provide guidance in preparation of the record of trial. Even if it created a substantive right for the appellant, the appellant has not alleged prejudice, and we find none. *See United States v.*

*Swan,* 43 M.J. 788, 792 (N.M.Ct.Crim.App. 1995).

### Conclusion

Accordingly, we affirm the findings and sentence, as approved below.

Senior Judge RITTER and Judge REDCLIFF concur.